IN THE CENTRAL DISTRICT COURT FOR THE

URBANA DIVISION OF ILLINOIS

| | |
|---|---|
| KEEFER JONES<br>PETITIONER/DEFENDANT | CASE NO. 02-CR-20029-MPM<br>CIVIL NO. 07-2086 |
| - v - | U.S. District Court Judge<br>Honorable Michael P. McCuskey |
| UNITED STATES OF AMERICA<br>RESPONDENT/PLAINTIFF | MOTION TO SET ASIDE, VACATE OR CORRECT A FEDERAL SENTENCE UNDER 28 U.S.C. § 2255 IN A FUNDAMENTALLY AND MANIFESTLY DEFECTIVE PROCEEDING |

MOTION TO SET ASIDE, VACATE OR CORRECT A FEDERAL SENTENCE
UNDER 28 U.S.C. § 2255 IN A FUNDAMENTALLY
AND MANIFESTLY DEFECTIVE PROCEEDING

KEEFER JONES ACTING IN PROPRIA PERSONA

| | |
|---|---|
| Keefer Jones<br>Iowa-2, #12843-026<br>P. O. Box 5000<br>Pekin, Illinois<br>   61555-5000 | U.S. District Court<br>Clerk of the Court<br>201 S. Vine Street<br>Urbana, Illinois 61801 |

T A B L E   O F   C O N T E N T S        PAGE(S)

MOTION TO SET ASIDE, VACATE OR CORRECT A FEDERAL SENTENCE
UNDER 28 U.S.C. § 2255 IN A FUNDAMENTALLY AND MANIFESTLY
DEFECTIVE PROCEEDING . . . . . . . cover
TABLE OF CONTENTS. . . . . . . . i
STATEMENT OF FACTS . . . . . . . ii-iv
STATEMENT OF CASE. . . . . . . . iv
PETITIONER ACTING IN PROPRIA PERSONA . . . . 1
MEMORANDUM OF LAW. . . . . . . . 2
GROUND ONE. . . . . . . .INEFFECTIVE ASSISTANCE OF COUNSEL . 3-4
GROUND TWO. . . . . . . .MATERIAL FACTS AND LEGAL EVIDENCE
                         DENIED TESTING PROCESS. . . 5-6
CONCLUSION . . . . . . . . . 7
CLAIM UPON WHICH RELIEF MAY BE GRANTED . . . . 7
PRAYER FOR RELIEF. . . . . . . . 8
CERTIFICATE OF SERVICE . . . . . . . 9

S T A T E M E N T   O F   F A C T S

On the evening of July 28, 2000, in preparation for executing a search warrant for a residence, several Decatur Police officers were performing surveillance of that residence at 940 North Main Street in Decatur, Illinois. During that time, Detective Jason Boesdorfer observed three black males, including Mr. Jones, coming and going from the residence. At approximately 8:30 p.m., Mr. Jones and his nephew Montae Jones left the home, got into a car and drove away. Detective Lorne Sturdivant followed and observed the car, driven by Mr. Jones, make a left turn without signaling. Detective Sturdivant then ordered Mr. Jones to pull the car to the curb. Mr. Jones was arrested for driving with a suspended license and taken to the Decatur police station.

Meanwhile, other police officers, including Detectives David Dailey and Chad Ramey, began the search of 940 North Main Street. The officers first searched a dresser in the living room where they found a plastic bag containing seventeen rocks of crack. Underneath the bag of crack, they found Mr. Jones' State of Illinois identification card and pages from his address book. Next to the dresser was a duffel bag containing men's clothing, men's shaving items and a letter addressed to Mr. Jones at 423 West Olive, Decatur, Illinois, which was postmarked July 19, 2000.

S T A T E M E N T    O F    F A C T S  (CONTINUED)

Underneath the dresser was a cell phone box and a receipt, dated June 27, 2000, for the cell phone made out to Mr. Jones at 423 West Olive, Decatur, Illinois.

The police also searched the northeast bedroom, which contained no furniture, only debris. In the bedroom, they found a Hardee's bag hidden in a radiator. Inside that bag were four plastic bags; two contained cash totaling approximately $1,700; the other two contained approximately 175 rocks of crack cocaine. The crack in each bag weighed over five grams.

After the search was completed, Detective Ramey left the house and returned to the Decatur police station, where he advised Mr. Jones of his Miranda rights. According to Detective Ramey, Mr. Jones signed a Miranda form indicating that he understood his rights. Detective Ramey testified at trial that, after signing this form, Mr. Jones told him that he moved to 940 North Main Street about a month earlier and that the duffel bag belonged to him. Mr. Jones also admitted to the Detective that he had been selling crack from the house during the previous two or three weeks and that the crack in the dresser and Hardee's bag belonged to him. He further stated that the $1,700 in the Hardee's bag was money that he made selling crack during the previous two days.

S T A T E M E N T   O F   F A C T S  (CONTINUED)

Detective Ramey then asked Mr. Jones to draft a written confession. Mr. Jones complied and wrote:

> " I've been staying at 940 Main Street for about three to four weeks and have been dealing drugs. About a couple thousand worth of the drugs were mine that were seized at that apartment in a raid (crack cocaine)."

S T A T E M E N T   O F   C A S E

Defendant/Jones' trial originally was scheduled for June 10, 2002. On May 30, 2002, the district court granted his motion for a continuance; the trial date wasreset for July 15, 2002. On July 3, 2002, Mr. Jones filed a second motion for a continuance, requesting additional time to obtain a handwriting analysis of the statement allegedly penned by Mr. Jones. At a hearing on this motion, Mr. Jones' counsel admitted that he had been provided the written confession by the prosecution, and had been under the mistaken impression that a police officer had written the statement and that Mr. Jones had only signed it. According to counsel, he did not realize his mistake until the final pretrial conference on June 28, 2002, when the government had told him that Mr. Jones had written and signed, not just signed, the statement.